# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| VANCE DOTSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-17-575-D |
| | ) | |
| ENERGY FUTURE HOLDINGS | ) | |
| CORP. d/b/a TXU ENERGY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Before the Court is a Motion for Summary Judgment filed by the remaining TXU Energy Defendants [Doc. No. 32].[1] Plaintiff did not file a response within the allotted time or thereafter. *See* LCvR 7.1(g), 56.1(c). Accordingly, TXU Energy Defendants' motion is now at issue.

## STANDARD OF DECISION

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Hiatt v. Colorado Seminary*, 858 F.3d 1307, 1315 (10th Cir. 2017) (*quoting* FED. R. CIV. P. 56(a)). A dispute is genuine "if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way," and it is material "if under the substantive law it is essential to the proper disposition of the claim." *Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013) (internal quotation marks omitted). At the summary judgment

---

[1] The motion is asserted by the TXU Energy Defendants set forth in the chart at pp. 4-5 herein.

stage, the Court views the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Williams v. FedEx Corporate Services*, 849 F.3d 889, 896 (10th Cir. 2017).

"The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-671 (10th Cir. 1998) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the movant meets that burden, the nonmovant must "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671; *see also* FED. R. CIV. P. 56(c)(1)(A). To accomplish this, the nonmovant must identify facts by reference to the pleadings, depositions, other discovery materials, exhibits or affidavits. *Id.* The Court is not limited to the cited materials, but rather may consider other materials in the record. FED. R. CIV. P. 56(c)(3). The Court's inquiry is whether the facts and evidence of record present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-252 (1986). Unsupported conclusory allegations are not sufficient to defeat summary judgment. *Matthiesen v. Banc One Mortgage Corp.*, 173 F.3d 1242, 1247 (10th Cir. 1999).

Although the Court generally views the evidence in the light most favorable to Plaintiff as the nonmoving party, Plaintiff did not respond to TXU Energy Defendants' motion, and thus he did not specifically controvert the statement of material facts set forth therein. Therefore, those facts are "deemed admitted for the purpose of summary

judgment." *See* LCvR 56.1(c), (e). Even without a response from Plaintiff, the Court still must determine whether judgment for the moving party is appropriate under FED. R. CIV. P. 56. *Reed v. Bennett*, 312 F.3d 1190, 1194-1195 (10th Cir. 2002). When a nonmoving party does not respond to a motion for summary judgment, he "waives the right to respond or to controvert the facts asserted in the summary judgment motion. The court should accept as true all material facts asserted and properly supported …. But only if those facts entitle the moving party to judgment as a matter of law should the court grant summary judgment." *Reed*, 312 F.3d at 1195.

## BACKGROUND

Plaintiff brought this action on May 19, 2017, against 16 defendants, alleging multiple violations of the Fair Credit Reporting Act ("FCRA"). [Doc. No. 1]. All Defendants, except Experian Information Solutions, Inc. ("Experian"), filed a Notice of Bankruptcy [Doc. No. 11] requesting the Court stay the proceedings during the pendency of bankruptcy proceedings[2] involving Energy Future Holdings Corporation ("EFH"). Plaintiff filed a response in opposition [Doc. No. 12], asserting that the instant action was not one that could have commenced prior to EFH's filing of bankruptcy.

On June 27, 2017, Plaintiff voluntarily dismissed Defendants EFH, TXU Energy Retail Company LLC, and TXU Energy Solutions Company LLC. [Doc. No. 14].

---

[2] EFH and 70 affiliated companies (including some of the TXU Energy Defendants) filed voluntary petitions for Chapter 11 bankruptcy on April 29, 2014. [Doc. No. 11-1 at 5]. *See also In re Energy Future Holdings Corp.*, Case No. 14-10979 (Bankr. D. Del. 2014). The debtors' cases have been jointly administered for procedural purposes.

The Court entered an Order [Doc. No. 22] on September 19, 2017, concluding that 11 U.S.C. § 362(a)(1) did not operate to stay Plaintiff's claims against Defendants. Based on the allegations in the Complaint, the Court concluded that TXU Energy Defendants' conduct giving rise to Plaintiff's claims occurred sometime after May 5, 2016, which was two years after the bankruptcy petition was filed.[3]

The 12 remaining TXU Energy Defendants have now filed a Motion for Summary Judgment [Doc. No. 32]. TXU Energy Defendants reassert their position that Plaintiff's claims arose pre-petition and that the bankruptcy court has jurisdiction. In support of this argument, TXU Energy Defendants point to facts that were not previously part of the record. TXU Energy Defendants also argue that the FCRA statute of limitations bars this action. Finally, TXU Energy Defendants assert that they are not proper parties to this action as they are no longer legal business entities because of conversion, dissolution or merger.

## UNDISPUTED AND MATERIAL FACTS

### A. Corporate Status of Remaining TXU Energy Defendants

The remaining TXU Energy Defendants are no longer legal business entities because of conversion, dissolution or merger. The following table illustrates their status:

| Named Defendant | Status |
|---|---|
| TXU Energy Industries Company | Merged into EFH in 2003. Plaintiff dismissed EFH on June 27, 2017. |

---

[3] Plaintiff alleges in his Complaint that after May 5, 2016, Experian sent a dispute notification to TXU Energy Defendants concerning the trade line item in Plaintiff's Experian credit report. [Doc. No. 1 at 6].

| | |
|---|---|
| TXU Energy Services Company LLC | Merged into TXU Energy Retail Company LP in 2001. TXU Energy Retail Company LP converted to TXU Energy Retail Company LLC in 2007. Plaintiff dismissed TXU Energy Retail Company LLC on June 27, 2017. |
| TXU Energy Services Company | Merged into TXU Transition Energy Services Company LLC in 2001. TXU Energy Services Company LLC merged into TXU Energy Retail Company LLC. Plaintiff dismissed TXU Energy Retail Company LLC on June 27, 2017. |
| TXU Energy Solutions Management Company LLC | Merged into TXU Energy Solutions Company LLC in 2007. Plaintiff dismissed TXU Energy Solutions Company LLC on June 27, 2017. |
| TXU Energy Solutions Company LP | Converted into TXU Energy Solutions Company LLC in 2007. Plaintiff dismissed TXU Energy Solutions Company LLC on June 27, 2017. |
| TXU Energy Retail Company LP | Merged into TXU Energy Retail Company LLC in 2007. Plaintiff dismissed TXU Energy Retail Company LLC on June 27, 2017. |
| TXU Portfolio Management Company LP | Converted to Luminant Energy Company LLC[4] in 2007. |
| TXU Portfolio Optimization Company LLC | Merged into Luminant Holding Company LLC in 2007. |
| TXU Energy Trading (Canada) Company | Dissolved in 2004. |
| TXU Energy Gas Asset Management Company | Dissolved in 2004. |
| TXU Energy Holdings Company | Dissolved in 2007. |
| TXU Energy Retail Management Company LLC | Dissolved in 2010. |

[4] Luminant Energy Company LLC and Luminant Holding Company LLC are debtors in the Delaware bankruptcy. [Doc. No. 11-1 at 5]. They are not named in this action.

### B. Pre-petition Conduct

On December 2, 2012, a TXU Energy account was created for the property located at XXXX[5] Vantage Point Dr., Apt. XXX, Dallas, Texas 75243 in Plaintiff's name. TXU Energy assigned it a customer account number of XXXXXX573928 and began providing electric service to the property on December 3, 2012.

On or about December 19, 2012, a person identified as Plaintiff called TXU Energy to request a move-out. The caller stated there was no forwarding address. TXU Energy discontinued service that day. On December 21, 2012, TXU Energy mailed an invoice for the $107.85 balance to the service address associated with the account. From December 2, 2012 until February 15, 2013, TXU Energy placed the account in its Early Out Program ("EOP").[6]

On January 23, 2013, TXU Energy sent a letter to Plaintiff, informing him that he owed an outstanding balance of $107.85. The letter also notified Plaintiff that if he failed to make payment arrangements within 10 days, TXU Energy could "report [his] account to one or more credit bureaus to make it part of [his] credit record where it may impact [his] ability to obtain credit." [Doc. No. 32-2 at 12].

---

[5] TXU Energy Defendants redacted the address and first six digits of Plaintiff's customer account number in their brief.

[6] TXU Energy uses the EOP to work constructively with customers to facilitate the resolution of outstanding invoices before referring the account to a collections firm or a consumer credit bureau. TXU Energy gives a customer about 115 days from the move-out date to pay an outstanding balance before reporting the customer to a consumer credit bureau.

After Plaintiff did not respond, TXU Energy mailed an account history to Plaintiff at the service address associated with the account. However, TXU Energy did not report Plaintiff at that time to any credit bureau.

On April 24, 2013, after multiple notices to Plaintiff about his outstanding balance, TXU Energy reported Plaintiff's debt to the credit bureaus through the Metro2 system.

TXU Energy received a letter from Plaintiff on June 19, 2013, requesting verification of the debt owed. TXU Energy responded that same day with a debt validation letter, which was mailed to Plaintiff's updated mailing address at XXXX Albany Ave., Oklahoma City, OK 73111.

On June 26, 2013, Plaintiff called TXU Energy to dispute the outstanding balance. A member of the fraud management team spoke with Plaintiff. During the conversation, Plaintiff asserted that he had certain rights under the FCRA. The team member explained that the debt was valid until Plaintiff could provide documentation to the contrary. To facilitate Plaintiff's efforts to contest the debt, the team member mailed Plaintiff an identity theft dispute letter (which contemplated a police report, an identity theft affidavit, and other supporting documents), the final bill, and an account history.

On July 16, 2013, TXU Energy notified the credit bureaus through the Metro2 system that Plaintiff was disputing the debt.

On October 15, 2013, TXU Energy sent Plaintiff a letter requesting additional information. TXU Energy requested supporting documents, including a police report or identity theft affidavit, to help evaluate Plaintiff's dispute of the debt. Plaintiff never sent such information.

On January 7, 2014, TXU Energy received another letter from Plaintiff requesting verification of the debt owed. TXU Energy again informed Plaintiff the $107.85 debt was valid.

On February 5, 2014, Plaintiff faxed a letter to TXU Energy, stating in pertinent part:

> "[Y]our firm has violated the law (including but not limited to) … the Fair Credit Reporting Act …. You have communicated and are continuing to communicate incorrect and defamatory information to third parties, including, but not limited to, Equifax, Experian, and TransUnion … I am now demanding the immediate and complete removal of this trade line from my credit reports (Equifax, Experian, and TransUnion)."

[Doc. No. 32-2 at 6, 25, 27].

On April 1, 2014, Plaintiff called TXU Energy and again disputed the debt associated with the account. Plaintiff asked TXU Energy to eliminate the debt. A customer care agent advised Plaintiff that he still owed the debt.

On April 21, 2014, TXU Energy received an automatic consumer dispute verification ("ACDV") message that Plaintiff had filed a direct dispute with the credit bureaus. TXU Energy submitted a debt validation response to the ACDV. TXU Energy also mailed Plaintiff an identity theft letter, which addressed steps for Plaintiff to follow to facilitate his efforts to dispute the debt. TXU Energy did not receive a response or any documentation from Plaintiff supporting his debt dispute.

## C.    Delaware Bankruptcy Proceedings

On April 29, 2014, EFH and 70 affiliated companies filed voluntary petitions for Chapter 11 bankruptcy in the United States Bankruptcy Court for the District of Delaware

("the Bankruptcy Court"). Among the debtors were EFH (the lead debtor), TXU Energy Retail Company LLC, and TXU Energy Solutions Company LLC[7]; all of which were voluntarily dismissed by Plaintiff from this lawsuit on June 27, 2017. [Doc. No. 14]. Notice of the bankruptcy was provided to more than 3.5 million TXU Energy customers, including Plaintiff, shortly after the petition date.

On May 2, 2014, the Bankruptcy Court entered an order directing TXU Energy customers asserting claims to file a proof of claim by October 27, 2014. On May 30, 2014, Plaintiff was provided notice of the "Customer Claims Bar Date." The notice was not returned as undeliverable. There is no record of a proof of claim filed by Plaintiff in the Chapter 11 bankruptcy proceedings.

On August 29, 2016, the Bankruptcy Court entered an order confirming the Third Amended Joint Plan of Reorganization, which went into effect October 3, 2016, as to Texas Competitive Electric Holdings Company LLC and its subsidiaries ("TCEH Debtors").[8] Paragraph 89 of the TCEH Confirmation Order and Article XI of the TCEH Plan grant the Bankruptcy Court exclusive jurisdiction to interpret and enforce the order and plan. [Doc. Nos. 32-5 at 2, 32-6 at 6-7].

---

[7] A complete list of the debtors is included in Defendants' Notice of Bankruptcy [Doc. No. 11-1 at 5].

[8] "TCEH Debtors" means, collectively: (a) Energy Future Competitive Holdings Company LLC; (b) Texas Competitive Electric Holdings Company LLC; and (c) TCEH's directly and indirectly owned subsidiaries listed on Exhibit A to the Plan, including, but not limited to, TXU Energy Retail Company LLC and TXU Energy Solutions Company LLC, who are named Defendants in this action. [Doc. No. 11-2 at 92, 117, 119, 204].

The TCEH Plan and TCEH Confirmation Order provided for broad injunctions and releases.[9]  Pursuant to the terms of the TCEH Plan, claims or interests against the debtors and reorganized debtors and their respective affiliates, predecessors or subsidiaries were barred after October 3, 2016.

On September 22, 2017, the Reorganized TCEH Debtors filed a Motion to Enforce the TCEH Confirmation Order in the Bankruptcy Court.  In the motion, the Reorganized TCEH Debtors asked the Bankruptcy Court to enter an order (a) enforcing the discharge, release and injunction provisions of the plan; (b) directing Plaintiff to dismiss this action with prejudice against the remaining Defendants except Experian; (c) permanently enjoining Plaintiff from asserting claims that could have been asserted against the TCEH Debtors in Bankruptcy Court; and (d) permitting the TCEH Debtors to recover their costs and attorney's fees.  [Doc. No. 32-7].

On October 3, 2017, the Bankruptcy Court held a hearing on the Motion to Enforce. At the hearing, the Bankruptcy Court made the following findings and conclusions:

> "[I]t is clear as a matter of evidence that the claim [Plaintiff] has asserted against the reorganized T-side Debtors in Oklahoma arose prior to the petition date, and as such, is a pre-petition claim."

> "It's also clear from the undisputed record that [Plaintiff] received actual notice of the bar date, and failed to file a proof of claim.  As a result of that, [Plaintiff] was not a creditor of the Debtor's estate."

> "[A]ny pre-petition claim he might have had filed or unfiled was discharged by the confirmation order that went effective in October of 2016."

---

[9] The TCEH Plan and TCEH Confirmation Order are included in Exhibit B to Defendants' Notice of Bankruptcy [Doc. No. 11-2].

"The Debtor's [sic] have overcome the allegation made in that complaint with actual evidence presented to [the Bankruptcy Court] today. In any event, that finding does not constitute res judicata or a collateral [estoppel] as asserted by [Plaintiff] in his objection, because that issue was never adjudicated, based on any kind of evidentiary record, and certainly was not finally adjudicated, in any event, by the Oklahoma District Court."

[Doc. No. 32-9 at 4-5].

The Bankruptcy Court entered an Order Enforcing the TCEH Confirmation Order the same day. The Enforcement Order required Plaintiff to "promptly dismiss with prejudice all … claims and/or causes of action" against all Defendants in this Court, except Experian. [Doc. No. 32-8 at 2]. The Enforcement Order also provided that "Plaintiff is forever and permanently enjoined from commencing or continuing any action or otherwise acting to assert any of the claims and/or causes of action asserted or that could have been asserted against the Reorganized TCEH Debtors." *Id.* Finally, the Enforcement Order provided that "Plaintiff is forever and permanently enjoined from contesting or challenging the enforceability of this Order in any court other than [the Bankruptcy Court] or by a timely and perfected appeal of this Order to a court of competent jurisdiction." *Id.* at 3.

When Plaintiff did not dismiss the remaining TXU Energy Defendants in this Court, TXU Energy Defendants filed a Second Motion to Enforce in the Bankruptcy Court on November 16, 2017. [Doc. No. 32-10]. On December 4, 2017, the Bankruptcy Court granted the Second Motion to Enforce, found Plaintiff in contempt of the Enforcement Order, and ordered Plaintiff to pay a $5,000.00 sanction. [Doc. No. 32-11].

## DISCUSSION AND ANALYSIS

**A.      The Bankruptcy Court has subject matter jurisdiction because Plaintiff's claims arose prior to the bankruptcy filing.**

On April 21, 2014, TXU Energy received an ACDV message that Plaintiff had filed a direct dispute with the credit bureaus.  On April 29, 2014, EFH and 70 affiliated companies filed voluntary petitions for Chapter 11 bankruptcy in the Bankruptcy Court.

Pursuant to 11 U.S.C. § 362(a)(1), the filing of a bankruptcy petition "operates as a stay, applicable to all entities, of … the commencement or continuation … of a judicial … action or proceeding against the debtor that was or could have been commenced before the commencement of the case … or to recover a claim against the debtor that arose before the commencement of the case[.]."  The Tenth Circuit has adopted the "conduct theory" in determining when a claim arises for purposes of the Bankruptcy Code.  *In re Parker,* 264 B.R. 686, 696 (B.A.P. 10th Cir. 2001).  A claim arises at the time the debtor commits the conduct that gives rise to the claim.  *Id.*

The FCRA provides a consumer with a private right of action against a person who furnishes credit information to consumer reporting agencies if the furnisher violates a statutory duty imposed by Section 1681s-2(b)(1).  These duties arise when a furnisher of information[10] receives notice of a dispute from a consumer reporting agency.  *See* 15 U.S.C. § 1681s-2(b)(1); *see also Sanders v. Mountain Am. Fed. Credit Union,* 689 F.3d 1138, 1147 (10th Cir. 2012); *Pinson v. Equifax Credit Info. Services, Inc.*, 316 Fed. Appx. 744,

---

[10] Plaintiff alleges in his Complaint that TXU Energy Defendants are "furnishers of information" within the meaning of the FCRA.  *See* Compl. [Doc. No. 1 at 4].

751 (10th Cir. 2009) (unpublished)[11] (statutory duties listed in Section 1681s-2(b) for furnishers arise only after the furnisher receives notice of a dispute from the credit reporting agency). When the furnisher receives notice of the dispute from the credit reporting agency, it must perform the verification and correction duties outlined in Section 1681s-2(b). *Sanders*, 689 F.3d at 1147. "[N]otice of a dispute received directly from the consumer does not trigger [a furnisher's] duties" under the FCRA. *Pinson,* 316 Fed. Appx. at 751.

TXU Energy Defendants' duties under the FCRA, as furnishers of information, were triggered on April 21, 2014, the date they received the ACDV message. An ACDV or Automated Consumer Dispute Verification is a form that credit reporting agencies use to verify creditor information. *Millett v. Ford Motor Credit Co*., No. CIV-04-2450-CM, 2006 WL 1301160, at *2 (D. Kan. May 9, 2006). "A consumer initiates the process, and the [credit reporting agencies] forward the form electronically to a creditor for investigation and response within a time period specified. The [credit reporting agencies] then delete[] a disputed item from the consumer's credit history if the creditor does not respond by the response deadline." *Id.*

"The use of an ACDV form is an accepted method of communicating the details of a consumer dispute." *Morris v. Trans Union LLC*, 420 F. Supp. 2d 733, 754 (S.D. Tex. 2006); *see also Quinn v. Experian Solutions*, No. CIV-02-5908, 2004 WL 609357, at *6 (N.D. Ill. March 24, 2004) ("[T]he CDV procedure alone is accepted by courts as an

---

[11] Unpublished opinion cited pursuant to FED. R. APP. P. 32.1(a) and 10TH CIR. R. 32.1.

adequate method both for assuring accuracy and for reinvestigation."); *Millett*, 2006 WL 1301160, at *3 (the completion of an ACDV form would constitute sufficient notice from a consumer reporting agency to trigger a furnisher's duties under the FCRA); *Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005) (the furnisher's investigation was reasonable considering the information it received from the consumer dispute verification form); *Johnson v. MBNA Am. Bank*, 357 F.3d 426, 429 (4th Cir. 2004) (the ACDV triggered the furnisher's duties under the FCRA); *Krajewski v. Am. Honda Fin. Corp.*, 557 F. Supp. 2d 596, 610 (E.D. Pa. 2008) (the furnisher fulfilled its obligations under the FCRA after concluding the information reported by the credit reporting agency in the ACDV was accurate as of the date reported).

Thus, TXU Energy Defendants' conduct giving rise to Plaintiff's claims occurred pre-petition. Therefore, Plaintiff's claims are subject to the automatic stay, and the Court agrees with the determination of the Bankruptcy Court that it has exclusive jurisdiction. *See Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009) ("[T]he Bankruptcy Court plainly [has] jurisdiction to interpret and enforce its own prior orders."); *In re Continental Airlines, Inc.*, 236 B.R. 318, 325 (Bankr. D. Del. 1999) ("It is axiomatic that a court possesses the inherent authority to enforce its own orders."); *In re Lyondell Chem. Co.*, 445 B.R. 277, 287 (Bankr. S.D.N.Y. 2011) ("[A] bankruptcy court retains core jurisdiction to interpret and enforce its own prior orders, including and especially confirmation orders.").

**B.     Plaintiff's FCRA claims are barred by the two-year statute of limitations.**

An action under the FCRA must be brought "not later than the earlier of two years after the date of discovery by the plaintiff of the violation that is the basis for such liability, or five years after the date on which the violation that is the basis for such liability occurs." 15 U.S.C. § 1681p.  The two-year statute of limitations applies here.  Because this action was filed on May 19, 2017, Plaintiff's claims are untimely if they accrued before May 19, 2015.  The Tenth Circuit has not clearly addressed this issue in the context of the FCRA. Several lines of analysis have been developed by other courts.  The Court finds under any applicable analysis that Plaintiff's FCRA claims are barred by the two-year statute of limitations.

It is clear from Plaintiff's correspondence with TXU Energy on February 5, 2014, that Plaintiff was aware of an alleged violation of the FCRA by TXU Energy.[12]  [Doc. No. 32-2 at 6, 25, 27].  *See Tilley v. Global Payments, Inc*., 603 F. Supp. 2d 1314, 1323-1324 (D. Kan. 2009) (a merchant's FCRA claims against a credit card processing service accrued, and the two-year statute of limitations began to run, when the merchant became aware of allegedly willful or negligent conduct on the part of the service in reviewing the

---

[12] "[Y]our firm has violated … the Fair Credit Reporting Act …. You have communicated and are continuing to communicate incorrect and defamatory information to … Experian." [Doc. No. 32-2 at 25, 27].  Plaintiff again disputed the debt via a telephone call on April 1, 2014.  On April 21, 2014, TXU Energy received an ACDV message that Plaintiff had filed a direct dispute with the credit bureaus.  These two dates also fall outside the statute of limitations.

merchant's credit information and reporting such information to the credit reporting agencies).

In deciding the issue, some courts have drawn upon the law of defamation's traditional "multiple-publication rule." *Kellum v. Midland Credit Mgmt., Inc.*, No. CIV-12-718-C, 2012 WL 3594895, at *1 (W.D. Okla. Aug. 21, 2012). "In the FCRA context, this means each transmission of an erroneous credit information is a separate FCRA violation." *Id.* (*quoting Larson v. Ford Credit*, No. CIV-06-1811-JMR/FLN, 2007 WL 1875989, at *2 (D. Minn. June 28, 2007)); *see also Hyde v. Hibernia Nat'l Bank in Jefferson Parish*, 861 F.2d 446, 450 (5th Cir. 1988) (concluding that each issuance of a credit report to an institution is a separate and distinct injury to which a separate statute of limitations applies).

Other courts have followed a narrower approach. In *Bittick v. Experian Info. Solutions, Inc*., 419 F. Supp. 2d 917, 919 (N.D. Tex. 2006), the court held that subsequent dispute letters regarding the same erroneous information cannot restart the limitations clock because "[t]o do so would allow [a plaintiff] to indefinitely extend the limitations period by simply sending another complaint letter to the credit reporting agency."

Plaintiff alleges in his Complaint that he sent a dispute letter to TXU Energy on May 5, 2016. [Doc. No. 1 at ¶ 11]. Under *Bittick*, this May 5, 2016 letter would not restart the limitations clock because the letter disputed the same $107.00 trade line item that Plaintiff previously disputed in February and April 2014.

Although Plaintiff alleges in the Complaint that on May 5, 2016, he was denied a mortgage loan and obtained a copy of his Experian credit report, which disclosed the

disputed $107.00 trade line item with TXU Energy, these are unverified conclusory allegations. There is no evidence in the record of the denial of the mortgage, a copy of the dispute letter, or a copy of his credit report. Thus, Plaintiff's unsupported and conclusory allegations do not create an issue of fact. *Matthiesen v. Banc One Mortgage Corp*., 173 F.3d 1242, 1247 (10th Cir. 1999).

### C. The remaining Defendants no longer exist because of merger, conversion or dissolution.

Federal Rule of Civil Procedure 17(b) sets forth the rules for determining the capacity of a party to sue or be sued. FED. R. CIV. P. 17(b); *see also* 6A Wright & Miller, *Federal Practice & Procedure* § 1559 at 602 (3d ed. 2018). It establishes three categories of parties – two of which are pertinent here. *Id.*

Rule 17(b)(2) provides that the capacity of a corporation to be sued is determined by the law under which it was organized. FED. R. CIV. P. 17(b)(2); *see also* Wright & Miller § 1559 at 603. TXU Energy Defendants assert that each of the remaining Defendants were either organized under the laws of Delaware or the laws of Texas.[13] Plaintiff does not dispute this assertion; thus, it will be deemed admitted under LCvR 56.1(e).

Rule 17(b)(3) applies to representatives and all legal entities other than corporations. Their capacity is governed by the law of the state in which the district court is located. Wright & Miller § 1559 at 603; Wright & Miller § 1564 at 623; *see also Busby v. Elec.*

---

[13] Five of the remaining TXU Energy Defendants are corporations.

*Utilities Employees Union*, 323 U.S. 72, 74 (1944).  Thus, the capacity of the limited partnerships and LLCs in this case to be sued is determined by Oklahoma law.[14]

### 1) *Dissolved Corporations*

TXU Energy Trading (Canada) Company and TXU Energy Gas Asset Management Company dissolved in 2004.  TXU Energy Holdings Company dissolved in 2007.  The dissolution of these corporations occurred long before a TXU Energy account was created in Plaintiff's name.[15]

At common law, dissolution terminated the legal existence of a corporation.  *Hunter v. Fort Worth Capital Corp*., 620 S.W.2d 547, 549 (Tex. 1981).  Once dissolved, the corporation could neither sue nor be sued, and all legal proceedings in which it was a party were abated.  *Id.* at 549-550.  To alleviate the harsh effects on creditors, an equitable doctrine – referred to as the trust fund theory – evolved.  *Id.*  The trust fund theory applied whenever the assets of a dissolved corporation were held by a third party.  *Id.*  Thus, under this doctrine a creditor could pursue the assets of a dissolved corporation through a third party.  *Id.*

---

[14] Four of the remaining TXU Energy Defendants are LLCs, and three are limited partnerships.

[15] A TXU Energy Account was created in Plaintiff's name on December 2, 2012.

Until recently, the recognition of the trust fund theory in Texas was embodied in Article 7.12 of the Texas Business Corporation Act[16]. *Id.*; *see also* TEX. BUS. CORP. ACT ANN. art. 7.12. Article 7.12 provided for the limited survival of claims after dissolution by a corporation. However, recovery was restricted to pre-dissolution claims. *Hunter*, 620 S.W.2d at 550-551. "If the legislature had intended for shareholders of a dissolved corporation to be liable for causes of action which accrue after dissolution, it could have easily provided so within the statutory language of Article 7.12." *Id.* at 552.

Plaintiff's claims, if any, against the dissolved corporations would have arisen after their dissolution. Article 7.12 bars recovery for post-dissolution claims. *Id.* at 552. Further, §§ 11.356 and 11.359 of the Business Organizations Code bar recovery. TEX. BUS. ORGS. CODE ANN. § 11.356, 11.359.

TXU Energy Trading (Canada) Company, TXU Energy Gas Asset Management Company, and TXU Energy Holdings Company became "terminated filing entities" in 2004 and 2007, respectively. "A terminated filing entity continues in existence until the third anniversary of the effective date of the entity's termination for the limited purposes of 'prosecuting or defending in the terminated entity's name an action or proceeding brought by or against the terminated entity' and 'permitting the survival of an existing claim by or against the terminated filing entity.'" *Cohen Acquisition Corp.*, 2015 WL 2404869, at *2; *see also* TEX. BUS. ORGS. CODE ANN. § 11.356(a)(1), (a)(2). "'[A]n

---

[16] On January 1, 2010, the Texas Business Corporation Act expired and was replaced by the Business Organizations Code. *See Cohen Acquisition Corp. v. EEPB, P.C.*, No. CIV-14-330-CV, 2015 WL 2404869, at *2 (Tex. Ct. App. May 19, 2015).

existing claim by or against a terminated filing entity is extinguished unless an action or proceeding is brought on the [existing] claim not later than the third anniversary of the date of termination.'" *Id.*; *see also* TEX. BUS. ORGS. CODE ANN. § 11.359(a).

The latest date of termination is 2007. Plaintiff was required to bring suit on his claims within three years of that date. Plaintiff did not file suit until May 19, 2017. [Doc. No. 1]. Thus, his claims, if any, against these dissolved corporations were extinguished within three years of their date of termination.[17]

  *2)*   *Dissolved LLC*

TXU Energy Retail Management Company LLC dissolved in 2010. Under Oklahoma law, an LLC ceases to exist as a legal entity upon the effective date of its articles of dissolution. *In re Midpoint Dev., L.L.C.*, 466 F.3d 1201, 1204 (10th Cir. 2006); *see also* OKLA. STAT. tit. 18, § 2004(B)(1), 2012.1(A). Further, an LLC must conclude its affairs prior to the effective date of the articles of dissolution. *In re Midpoint Dev., L.L.C.*, 466 F.3d at 1206. An LLC cannot sue or be sued once its articles of organization are canceled

---

[17] Delaware has a corporate survival statute that is akin to § 11.356. *See Carter v. Harvey*, 525 S.W.3d 420, 426 (Tex. Ct. App. 2017); *Regal Ware, Inc. v. CFJ Mfg., L.P.,* No. CIV-13-44-CV, 2015 WL 1004380, at *3 (Tex. Ct. App. Feb. 27, 2015); DEL. CODE ANN. tit. 8, § 278. It provides that all corporations shall continue "for the term of 3 years from such expiration or dissolution" for the purpose of prosecuting or defending suits. DEL. CODE ANN. tit. 8, § 278. In *Regal Ware, Inc.,* the court discussed whether Regal Ware, as an assignee of the dissolved corporation's assets, could pursue an action that arose during the dissolved corporation's existence, but was filed after the expiration of the survival statute's three-year period. *Regal Ware, Inc.*, 2015 WL 1004380, at *3. The court found that none of the exceptions to the survival statute applied. Thus, Regal Ware could not maintain the action. *Id*. at 3-4.

and it ceases to exist as a separate legal entity. *In re White*, 556 B.R. 489, 496 (Bankr. N.D. Okla. 2016).

Here, Plaintiff's claims did not arise while the above entities were in existence. Moreover, Plaintiff filed suit more than three years after dissolution of the entities. Thus, Plaintiff is barred from recovering from TXU Energy Trading (Canada) Company, TXU Energy Gas Asset Management Company, TXU Energy Holdings Company, and TXU Energy Retail Management Company LLC, and they are entitled to summary judgment on Plaintiff's claims.

### 3) *Merged Entities*

TXU Energy Industries Company, TXU Energy Services Company LLC, TXU Energy Services Company, TXU Energy Solutions Management Company, and TXU Energy Retail Company, LP all merged into entities that were voluntarily dismissed from this lawsuit by Plaintiff on June 27, 2017. TXU Portfolio Optimization Company LLC merged into Luminant Holding Company LLC in 2007. Luminant Holding Company LLC is not a named defendant in this action.

The law in Texas, Delaware and Oklahoma is clear that when two entities merge with one another, Plaintiff must file suit against the surviving entity. The entity that survives the merger is the only entity that has the capacity to be sued. *See* TEX. BUS. ORGS. CODE ANN. § 10.008(a)(1) ("When a merger takes effect the separate existence of each domestic entity that is a party to the merger, other than a surviving or new domestic entity, ceases."); *Engel v. Teleprompter Corp.*, 703 F.2d 127, 131 (5th Cir. 1983) ("A merger of two corporations contemplates that one corporation will be absorbed by the other and will

cease to exist while the absorbing corporation remains."); DEL. CODE ANN. tit. 8, § 259(a)

("When any merger or consolidation shall have become effective … the separate existence of all the constituent corporations, or of all such constituent corporations except the one into which the other or others of such constituent corporations have been merged … shall cease and the constituent corporations shall become a new corporation …."); *Berg Chilling Sys., Inc. v. Hull Corp.*, 435 F.3d 455, 470 (3d Cir. 2006) (recognizing that an essential characteristic of a merger is that one corporation survives while the other ceases to exist); *Vulcan Materials Co. v. United States*, 446 F.2d 690, 694 (5th Cir. 1971) (the court, applying Delaware law, found that the separate existence of a corporation ceases after it has merged into another corporation); OKLA. STAT. tit. 18, § 2054(E), (F) (LLC mergers); OKLA. STAT. tit. 54, § 500-1109A(a) (limited partnership mergers)[18].

Accordingly, TXU Energy Industries Company, TXU Energy Services Company LLC, TXU Energy Services Company, TXU Energy Solutions Management Company, and TXU Energy Retail Company, LP – entities that merged into defendant entities which were voluntarily dismissed by Plaintiff – are entitled to summary judgment on Plaintiff's claims. Further, TXU Portfolio Optimization Company LLC is entitled to summary judgment on Plaintiff's claims, as that LLC merged with an LLC that is not a named defendant in this action.

---

[18] When a limited partnership is a party to a merger but is not the survivor, the general partner's pre-merger liability exposure continues with respect to any obligation or liability that existed at the time of the merger. OKLA. STAT. tit. 54, § 500-1111A. Here, however, when TXU Energy Retail Company LP merged into TXU Energy Retail Company LLC in 2007, no obligation or liability existed. Plaintiff's claims arose after the merger.

*4)     Limited Partnerships that Converted to LLCs*

The two remaining Defendants – TXU Energy Solutions Company LP and TXU Portfolio Management Company LP – both converted in 2007 into LLCs. One LLC Plaintiff dismissed, and the other LLC is not a party to this lawsuit. In Oklahoma, "[w]hen an entity has converted to a domestic [LLC] … the domestic [LLC] shall be deemed to be the same entity as the converting entity." OKLA. STAT. tit. 18, § 2054.1(F). The conversion to an LLC does not "affect any obligations or liabilities of the entity incurred before its conversion." OKLA. STAT. tit. 18, § 2054.1(E). Further, "all debts, liabilities and duties of the entity that has converted shall remain attached to the domestic [LLC] and may be enforced against it to the same extent as if the debts, liabilities and duties had been incurred or contracted by it in its capacity as a domestic [LLC]." OKLA. STAT. tit. 18, § 2054.1(F).

Here, however, there was no proceeding pending until after conversion. Both limited partnerships converted to LLCs in 2007. Plaintiff filed this action on May 19, 2017. [Doc. No. 1]. Moreover, the conversion of both entities occurred five years before a TXU Energy Account was created in Plaintiff's name. Because Plaintiff dismissed the converted entity, TXU Energy Solutions Company LLC, on June 27, 2017 [Doc. No. 14], any action against the converting entity (TXU Energy Solutions Company LP) is not appropriate. Further, Luminant Energy Company LLC – which is the converted entity resulting from TXU Portfolio Management Company LP's conversion – is not a named defendant in this action. Accordingly, TXU Energy Solutions Company LP and TXU Portfolio Management Company LP are entitled to summary judgment on Plaintiff's claims.

**CONCLUSION**

IT IS THEREFORE ORDERED that the remaining TXU Energy Defendants' Motion for Summary Judgment [Doc. No. 32] is GRANTED. The only claims remaining in this action are those pending against Experian.

IT IS SO ORDERED this 13th day of June 2018.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE